Chief Justice Robertson,
delivered the opinion of tho Court,
Preston sued Clark and others, in the Wythe chancery court of Virginia, to injoin, in the hands of debtors of Clark and another, (both of whom was proceeded against as absent defendants, by constructive service only.) the amount of two notes which he held on them, and to subject the debts to the payment of his notes, and for such other relief as should be equitable. Having (in 1825,) obtained a decree against the absent defendants for the amount of their notes, and against their debtors for the payment of the amount of their debts, towards the ex-tinguishment of the debts decreed to himself. Preston, afterwards, to-wit: in 1827, brought an action of debt in the Lawrence circuit court, in this State, against Clark, on the decree for the amount of one of the notes. Clark filed three pleas, nil debet, nul tiel record and payment. Issues were taken on the 2d and 3d pleas, and a demurrer was sustained <o the 1st plea. Whereupon, the jury found a verdict for Preston, to reverse the judgment; on which, Clark appealed.
The principal objections made to the judgment by the appellant’s counsel, are
1st. That the declaration is not good.
2d. That the plea of nil debet was an admissible defence.
3d. That the issue to the court on the plea of nul tiel record, should have been decided in the appellant’s 'favor.
An action of debt is maintainable on a decree, an-eientiy *n England, the common law judge was unto notice the proceedings of the chancellor, or to furnish any assistance, for enforcing his orders oí' decrees. This was one of the effects of that jealousy, which originating in the common and instinctive veneration for the common law, and a consequent antip- *601 ¿ithj to the civil code, was blown almost into a ilarfie by the progressive innovations and encroachments of the chancellor on the practice of the common law, the jurisdiction of its courts, during, and succeeding the wars, between the houses of York and Lancaster, and was exemplified by many judicial battles, such as that between Ellesmore and Coke. But experience has shewn that equity and common law are not alien to each other; buttha> their co-operation is indispensable to justice, the liberal principles of the one being necessary for the wholesome administration of the stern doctrines of the other. Hence, although there may have been a time, when the common law judge would not have sustained an action of debt on a decree, it is not so now. A judgment is but record evidence of a debt. A decree is also record evidence of the existence of a debt. And an action of debt may be maintained as well on the one, as on the other, because each is equally the evidence of a debt, and therefore, upon principle, should be equally the foundation of the same action.
Debt is the only proper cortTwhicbls conclusive; but if the rel^afucklv-idence oflia-debto/as*61 sumpsitmay bemaintained
Aforeignjndg-m-nt is only prima fade evidence, when a suit is Aro’f upon it; but if brought in in-Cidehtly or collaterally,it is conclusive.
Statute oflim-itations may be pleaded to suitor, foreign judgment.
Debtis the only proper action on a record which is conclusive. But on a record which is only prima fa cie evidence of liability, either debt or assumpsit may be maintained.
A foreign judgment,(excepting, perhaps, cases “in rem,”) is only prima fade evidence, when a suit is brought upon it, Walker vs. Witter, I. Douglas, 1; Herbert vs. Cook, Willis’ Reports, 37; n. a. Buttrick, et al vs. Allen, VIII. Massachusetts Reports, 273; Smith vs. Lewis, III. Johnson’s Reports, 157; Mills vs. Duryee, VII. Cranch, 481.
But when a foreign judgment is brought in, incP dentally, or collaterally, it is, as long as it remains un" reversed, conclusive, Burrows vs. Jemino, II. Strange, 733; Bal. n. p. 245, III. Johnson’s Reports, 168.
The statute of limitations maybe pleaded to a suit on a foreign judgment, Duplein vs. Dekover, II. Vern 540; Hubbell vs. Condrey, V. Johnson’s Reports, 131. And consequently it would seem to result, by anallogy, that debt or assumpsit might be maintained in such a case, upon the undertaking implied by law to satisfy the judgment, or perform the decree, I. Douglas, 1. The *602 decree in ibis case, (if the cowl haü jurisdiction)^, B.t least, entitled to as much effect asa foreign judgin' nt.
General rulo, thatjudgment or deorco a-¡jainst person who had no notice, in fact, of pendency of the suil, has no effect on his rights. But constsuc-iive-notice is suffi -.i-ul in ■ionic cases.
Debt wiii lie on acoree against absent defendants, before, the 7 years h ive e lapsed, within which, it may be opened. Whore judgment or decree him) on is prima facie evidence of debt, deft may impeach it and shew that it ought never to have bren rendered. If conclusive where rendered, is conclusive here.
*602 But it is urged, that as the appellant was never ac” tuaily served with oticc of ihe pending of the suil against him, in Virginia, and did not appear or defend it, the decree against him is void, and therefore, cannot be the foundation of any suit.

This is not shewn by the- declaration.

It is a general rule, that a judgment, or decree against a person, who had no notice in fact, oí the pendency of the suit, can have no effect on his rights. But this rule of the rommon law lias undergone s'oi 'e modification by statute. Constructive notier is sufficient ¿asome cases. Thus, a judgment against bail, is valid, when rendered on the return of two nihils, and a decree may he “sub mr/dn,” binding on the absent defendant in some eases, if there had been a regular publication against him.
The declaration in this case, does not shew any thing which would invalidate the decree. It does not even shew that the appellant was not served with process.
But the appellants counsel, contends that debt cannot be maintained on tlie decree, because seven years have not elapsed sinre it was rendered. He supposes that the dr cree, during the seven years succeeding its dale, is not final, and cannot be enforced, in this, we think he is mistaken. The decree ifinal. A writ of error, oran appeal might be prosecuted to reverse it, within the seven years. Í! may be enforced as other decrees, until it shall be reversed by a supervising court, or set aside bi that which rendered it, or opened by the appearance of the absent defendant, wilhin the time prescribed for opening it. A decree against an infant is not absolutely conclusive, until after he shall have attained lesa] discretion, or become “siif juris.n But in the. mean time, it may be carried into effect, subject only' to the contingency of being opened within the firm allowed. So a decree against an absent defendant, is not al once absolute and irrevocable. But the successful party may proceed upon it, un:il arrested upon an appeal or « rit of error, or by the petition ol the absent defendant to be *603 heard on Its merits. The only difference between su>-;i a decree as this, and one rendered on actual service, is, tnat the latter is conclusive, until reversed by an appellate court, and the former is prima facie, evidence, until either so reversed, or opened by the court which rendered it, on petition within the limited time. If, because this decree might be opened within seven years, debt cannot be maintained upon it, way should debt be maintainable on any judgment or decree, before the time shall have expired lor revision? An erroneous decree may be reversed, if the injured pariv prosecute a writ of error in due time; but it is binding until reversed, and caunot be questioned; and debl may be maintained upon it, as well before, as after the time shall have expired for asking its reversal Whenever any process may issue to enforce a decree, debt may he maintained on if. [fa defendant, in an action on sucli a decree as this, desire to get clear of its effect entirely, he must have it opened by the court which rendered it, or shew in his defence to the action, that it is invalid or unjust, in a suit to. enforce a judgment or decree, which is only prima facie evidence ol the defendant’s liability, he may impeach (lie judgment or decree, and shew that it ought never to have been rendered. But the fact that it does not appear from the declaration, that the appellant had not actual notice, is a still more conclusive answer.
In suit oo decree of a sister state, not necessary to aver in declaration, that court in which decree was rendered ‘had. jurisdiction.”
It was not necessary to aver in the declaration, that the Virginia court had such jurisdiction as would au'horze it to render a: y decree, other than one “m rent.” The comity and respect which are justly due from one state to another, and the liberal interchange of which, among their functionaries is indispensable to .the harmony and int-grii v of the union, would not allow this court to presume that the tribunal, which pronounced the decree m this case, transcended its authority. 11 is therefore, not necessary that the declaration should aver, that the Virginia court had jurisdiction; if it had not, it was proper for the defendant below lo show that fact; nor was it necessary that the declaration should aver that the defendants, resident in Virginia, had not satisfied the decree. If the court had a right to render such a decree «s it *604 did, Preston had a right to proceed on it against all, or any of the defendants, until he made his debt. And if he made it, or any portion of it, out of the resident defendants, that fact should have been shewn in the defence to this suit. Price vs. Higgins, I. Lit Reports, 274.
But there is a defect in the declaration. The declaration is in debt for $500, and it shews that the debt is only $124 75 cents, and avers the non-payment of the smaller sum.
“Nil'deb el” was not well pleaded, because, as the plea did not crave oyer of the record, nor aver that the decree was rendered oh constructive service; it did not show- that the record was not conclusive. If it had, however, shewn this, the plea of nil debet, was a proper defence to the action. Even if the chancellor had complete jurisdiction, his decree against the appellant, as an absent defendant, is only prime, facie evidence, in a suit to enforce the liability which it imposed. During seven years succeeding its date, it was not conclusive in Virginia, and if within that period a suit had been brought to enforce it in Yirgi • nia, instead of Kentucky, it would have been there only prima facie evidence of the debt. In this respect, like á foreign judgment, it would have been in Virginia, forsevenyears,conclusive,when used collaterally, but not so in a direct suit upon it. It is entitled to as much effect here, as it would have had in Virginia. It has been decided by the supreme court of Ñew-Yor'k, .that the judgment of a sister state, rendered on personal service, should be regarded on a suit upon it, as a foreign judgment, and that, consequently, it cannot be conclusive. See Hitchcock et al Aiken, I. Caines Reports, 460; Taylor vs. Bryden, VIII. Johnson’s Reports, 173; Hubbell vs. Condrey, V. Ibid. 132.
But this doctrine is overruled by the decisions of the supreme court of the United states, and is opposed by the decisions of this court, and by those of other States. See Mills vs. Duryee, VII. Cranch, 481; Hampton vs. McConnell, III. Wheaton, 234; Field vs. Gibbs, I. Peters, 155, Ibid. 78; Rogers vs. Coleman, Hardin, 413; Delano vs. Jopling, I. Lift, *605 117; Price vs. Higgins, Ibid. 273; Armstrong vs. Carson’s exr’s. II. Dallas, 302; Bissel vs. Briggs, IX. Massachusetts Reports, 462.
Ml debet may be apleaded-to jeM^hioh0^ are not founded on a spe-cia% orcon-elusive record,
To promote concord, and strengthen the union, it is declared in the first section of the fourth article of the constitution of the United States, that “true faith and credit shall be given in each State, to the public acts, records and judicial proceedings, of every other state.” Under the authority of the constitution, the first congress, by an act of May, 26th, 1790 (U. S. laws, vol. I. p. 115,) declared, that such records, &c. when properly authenticated, “shall have such faith and credit given to them, in every court within the United States, as they have by any law or usage in the courts of the state, from where the said records are, or shall be taken.”
If neither the supreme court of the United States, nor this court, had ever given any construction to these constitutional and legal provisions, we could not hesitate to interpret them so as to entitle the judgments and decrees of a co-state, to precisely the same effect in any other state, as it would have by the laws of the state where it had been rendered. It, therefore, this decree would be conclusive in Virginia, it must be conclusive here. If it be only prima fa-cie evidence there, it is prima facie here; it it be void there, it is void here. But believing that if the chancellor did not exceed his authority, the decree would only be prima facie evidence in Virginia, before the expiration of seven years, therefore, it cannot be conclusive here. Whether, if the seven years had expired, the decree vyould be conclusive, need not now be decided.
JVil debet may be pleaded to all actions of debt which are not founded on a specially or conclusive record; or in other words, in all such actions, in which the deed or record is not the basis of the action, hut is only inducement, as in debt for rent reserved by deed; debt for an escape, or for a devastavit or , , c • • i t .i ,. debt on a foreign judgment. In these cases, the occupation, the escape, the devastavit, the implied promise to satisfy the judgment, are the foundations of the actions; and the deeds, and the judgments, are only inducements.
Nil debct may be :>l'ia'led to debt on a foreign judgm’t.
Verdict, in debt on a de-crc- of «ister state, should find the ain’t of the debt due, and also the amount of inte.e-d. due thereon.
It results, that nil debet was a good plea in this case, if it had hewn that the decree was not rendered on personal service. It would be pleadable in debt on a foreign judgment, because the judgment would be inconclusive. The same reason applies here. In neither case, is the record, the foundation of thé suit. Under the plea of nil debet, the plaintiff would have to prove his debt. To do so he would firs-1 introduce the record, and this being prima facie, would be sufficient, uniil the defendant should destroy or counteiact it, by shewing, either that the decree was unjust on the merits, or that it had been satisfied since it was pronounced, or that it had been opened and remained so, or had been reversed.
If tiie pleadings had shewn the record, or the facts which it exhibits, it would seem to follow, on the third point, from the forgoing considerations, that the plea of nul tiel record, was improper, because the record was only inducement. But as the case stood, the plea was proper, and the decision of the court was erroneous on the issue. The record exhibited does not correspond with that described in the declaration; the sums are different, and the decrees arc essentially variant. Such discrepancies are fatal. See I. Chitty, 355; and Thompson vs. Jameson,I Cranch, 289.
The. verdict and judgment are also erroneous. The verdict ought to have found the amount of debt due, and the amount of interest due thereon. The verdict is indefinite as to the amount of the debt, and is silent as to the rate of interest.
We have thus disposed of the principal points which have been presented directly, and have ascertained that the judgment is erroneous.
But there is a more radical error in the record than any which has been noticed. If is necessarily presented by the motion for a new trial, on the ground that the verdict was contrary to law and evidence.
It appears from the record, that the appellant was “no inhabitant” of Virginia, when the suit in chancery was instituted. It is also fairly to be inferred, that he had, before that time, removed to, and become a citizen of Kentucky, by being domiciled here- *607 There is no intimation that he was then a citizen of Virginia; and the jury therefore, ought to have inferred that he was not.
If a citizen of one state have property in another, that property is subject to the lex loci-, hut d. oree m judgment ren-daren in such state without service cl process, or ap-pearan- e < n-tered, cannot opera t"inper-sonam, hut on the property ly or, within the jurisdiction of the court.
Taking it therefore, as conceded, that he was not only a resident, hut a citizen of Kentucky, we are of opinion, that the decree against him, can have no other effect than to operate on his property which was within the jurisdictional limits of Virginia, and to attach which, the suit in chancery was instituted.
No court in Virginia could rightfully render a decree “fnpersonam” against a citizen of Kentucky, unless by being in Virginia and served with process, or by entering his appearance, he gave the court pe» zonal jurisdiction. Either the person or some of his property must be within the jurisdiction ot a court before it can render any decree against the person or thing. The property does not give jurisdiction over the person. If a citizen of Kentucky own property in Virginia, that property is subject to the laws of Virginia, and her courts may have jurisdiction over it. But he, whilst he shall remain in Kentucky, is not subject to the laws of Virginia, nor can her courts exercise any jurisdiction over him, except so far as to reach his property in Virginia. If a citizen of the United Slates own property in England, by permitting it to remain there, he subjects it to the municipal laws, and to the. “eminens dominium,” of England, and to the jurisdiction of British courts.
But the control of the sovereign power over the property, vests no jurisdiction over the person of its owner.
The sovereign may dispose of the property, but his dominion does not reach the person. It cannot penetrate the limits of another independent sovereign. A court in England, might make a decree for disposing of the property; hut it could go no farther. It would have no right to render any decree in per-sonam against the owner, unless he had been served with process in England or within her dominion; and this court would not lend its aid to enforce such a decree.
So, the court of chancery of Virginia had jurisdiction over the chose in action of the appellant, which *608 was attached; but its power extended no farther. It could sequester the property, and subject it to the payment of the appellee’s debt; but it had no power to render a decree against the appellant, affecting him, otherwise than by acting on his property in Virginia.
To entitle a foreign judgment to the effect of pri-ma facie evidence, the court rendering it, must have jurisdiction over the parlies and subject matter
Neither the statues of174S nor those of 1777, nor 17-85,';regulating proceeding against absent defendants authorized a decree exeept in rem.
A foreign judgment “in personam,” has no effect whatever, unless the person against whom it was rendered, had personal notice of the suit. Kibbe vs. Kibbe, Kirby’s Reports, 119; Phelps vs. Halker,I. Dallas, 261; Bartlet vs. Knight I. Mass. Reports, 401; Kilburn vs. Woodworth, V. Johnson’s Reports. 37; Robinson vs. Ward’s exr’s. VIII. Ibid. 86; Fenton vs. Garlick, Ibid. 194; Borden vs. Fitch, 15, Ibid. 121; I. Starkie, 525.
To entitle a foreign judgment to the effect of prima facie, evidence, the court rendering it, must have jurisdiction of the cause, and of the parties, Butrick et ux. vs. Allen, VIII Mass. Reports, Bisset vs. Briggs, IX. Ibid. 462; Borden vs. Fitch, XV. Johnson, 232; I. Starkle, 215, note.
These are common law doctrines, notin every respect applicable to the judgments of the several slates in our union.
But Virginia cannot bind, by her legislation, the citizens of other States, when not in Virginia. Her laws cannot, nor can those of any sovereign, be inted-ed to operate “extra territoriamJ” If she ever enacted a statute authorizing a judgment, or decree uin personam1' by constructive service only, against a citizen of any other state, it would be unavailing, and would, we presume, be so declared by her own supreme court.
We do not judicially know of any such statute of Virginia. According to any rational interpretation of her statutes, as to proceedings against absent defendants, in force at the separation, none of them authorized any other than a decree “in rem..” The statute of 1748, did not, and we are well satisfied that neither those of 1777 nor of 1785 did, or was ever so construed.
We will not say that a judgment, or decree, “in personamf rendered by a courtof Virginia on construe- *609 tivé sfervice, against one of her own citizens, as an absent defendant, would not be binding, if her laws authorize such a proceeding for such an end. Indeed, we would suppose that it might be prima facie, binding. But such judgment, or decree against a citizen of another state, would be void, whether it be pursuant to any statute of Virginia or not. Such a statute could not be recognized as operative. She could have no power to pass it; she would not attempt to enforce it, we must suppose, and if an attempt be made to enforce it here, we should feel bound to consider it as totally ineffectual.
íhe constituv 0° comrress*’ give to the judgment or feot in another, it would ¡j^te in which u was render-1 ed.
The constitution and act of congress, give to the decree in this case, such effect as it would be entitled to have in Virginia, by the laws or usages of that State.
Law means an ordinance or principle, or rule which is valid and binding; and the Usage of a state was ■intended to mean such .practice as is not repugnant to law. „
If there be any statute of Virginia, authorizing this decree, farther than as it operates on the chose in action in Virginia, it cannot be considered ‘daw.” If there be any usage which might seem to sanction it, the usage is contrary to the fundamental principles of all law.
The constitution never could have been designed to enforee upon the citizens of the several states, the judgments of the courts of states, of which they were never citizens, obtained against them without actual notice, and which could not be rightfully cri-forced against them by the admitted authority of the governments, by whose organs they may have been rendered. It was intended only to give to the Valid and authorized judgments of each state, the same effect in all the states, as that to which they should be entitled in the state where they had been given.
This court would not dispute a regular judgment rendered by a competent court of another state,according to her local laws, as expounded by her supreme authority, so far as it had t he right to expound and settle them. But we know of no authority in Virginia to decide for Kentucky, on the validity of *610 any legislative act of Virginia, made to operate oui of her limits: nor do we know of any decision by „ rr. , . , . , J J supreme court oí Virginia, which sanctions the decree now attempted to be enforced here.
A decree in ^inst^lmcit-fzen of another, who has neither been prooessnor entered an ap-no tTm)6' r£ niffi fade evi-donee oi right nor oan^it be (ion of'an'aotion, action must be on orfsidefation ; otherwise, if’ decree be\i-°r gainst a oiti-zen of the an absent defendant.
We presume that there has been no such decision, and if there had been, the courtesy proper from one state towards another would not require, and our own duties would not permit this court to submit to it. As Virginia cannot pass any valid statute to operate beyond her limits, on citizens of other states not within her jurisdiction, no decision of Virginia, on such act can be authoritative; no such decision can make that binding, which is void according to the admitted principles of all regular power.
We must conclude, therefore, that this decree can have no effect farther than it may operate inrem. If ^le debtors °f appellant, who were directed by the decree to pay to the appellee the amount of their debt, had come to Kentucky, and been sued on the decree, the record would have been conclusive against them. For it should have-had the like effect in Virginia, because they were personally served with process_» and as to them and the debt, the court had ju-risdiciion. And so far as the decree tended to divest the appellant of his debt, so directed to he paid to others, it would have been prima facie binding on him, *n a su*t in chancery here upon it, against all the parties concerned, because the chancellor had a right to make the decree in rem, subject to the appellant’s right to open or impeach it. But further than this, the decree has no effect whatever on his rights.
Any other doctrine would tend to frustrate the design of the constitution, and to subvert the acknowi-edged rights of the confederated states. Its tendency would be to give to any one state, sovereignty over the persons of the citizens of every other slate, wherever they might be.
Wherefore, it is our opinion that the record exbib-' its a case which shews that the appellant was not liable to any action in consequence of the decree against him personally; and ¡hat before the appellee can recover any thing from him by suit, he must bring bis suit on the original consideration.
AT Connell, for appellant.
The decree is not even prima facie evidence against >bim, any farther than it- operates in rem, unless he was a citizen uf Virginia when the" bill was filed. which event, the decree in personam would be prima facie evidence against him, if the law of Virginia authorized a decree in personam against absent defendants, who were citizens of Virginia. Her laws can operate within her own territory, and on her own citizens, but she cannot legislate for Kentucky.
Wherefore, the judgment ofthe circuit court is reversed, and the cause remanded for proceedings consistent with the principles of this opinion.